UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
:
NIGEL NICHOLAS DOUGLAS, :
:
                        Plaintiff, :
: 13-CV-2613 (VSB)
        - against - :
: **OPINION & ORDER**
HARRY N. ABRAMS, INC., :
:
                        Defendant. :
--------------------------------------------------------X

Appearances:

Nigel Nicholas Douglas
Adelanto, California
*Pro Se Plaintiff*

Edward J. Davis
Sharon L. Schneier
Collin James Peng-Sue
Jaya Nandita Kasibhatla
Yonatan Berkovits
Davis Wright Tremaine LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Pro se Plaintiff Nigel Douglas brings this action pursuant to 28 U.S.C. §§ 1332 and 1338, raising various claims under state law and the Copyright Act based upon Defendant's continued possession of Plaintiff's manuscript entitled "Fosu's World." Following Defendant's motion to dismiss, thirteen of Plaintiff's fifteen claims were dismissed. Now before me are the parties' cross-motions for summary judgment on the remaining claims for conversion and replevin. (Docs. 170, 181.) Because there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.

I.   **Background**[1]

Abrams is a book publisher based in Manhattan that specializes in illustrated books, including children's books. (Def.'s 56.1 ¶ 1; Pl.'s Resp. ¶ 1.)[2] Douglas, a federal inmate at USP Victorville in Adelanto, California, (Def.'s 56.1 ¶ 2; Pl.'s Resp. ¶ 2), is the author of "Fosu's World," (the "Manuscript"), which is at the center of the parties' dispute. Douglas claims to have submitted the Manuscript to Abrams, without being solicited to do so, on October 31, 2011. (Am. Compl. ¶ 10.)[3]

In September 2011, Dwayne Alberto Furet, a fellow inmate of Douglas, asked his girlfriend, Ladonza Purnell, to provide Furet with a list of children's book publishers. (Schneier Decl. Ex. C ¶¶ 9–10; *id.* Ex. F.)[4] Purnell provided a list children's book publishers, including Abrams, with the websites and physical addresses for each of the publishers. (*See id.* Ex. F.) The information she provided came from the website http://www.bookmarket.com/childrens-ef.htm (the "Website"). (*See id.*) Douglas learned about Abrams through a posting on the Website. (Def.'s 56.1 ¶ 4; Pl.'s Resp. ¶ 4.)

To learn more information on Abrams, Douglas also independently consulted a book entitled 2009 Children's Writer's & Illustrator's Market (the "Book"), which contains a section on Abrams. (Def.'s 56.1 ¶ 6; Pl.'s Resp. ¶ 6.) Abrams did not publish the Book and denies any

---

[1] The following facts are undisputed or construed in light most favorable to the non-moving party, unless otherwise noted. Because each party has filed a motion for summary judgment, I must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his or] its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted).

[2] "Def.'s 56.1" refers to Defendant's Rule 56.1 Statement of Undisputed Material Facts. (Doc. 172.) "Pl.'s Resp." refers to Plaintiff's Responses and Objections to Defendant's Statement of Material Facts. (Doc. 195.)

[3] "Am. Compl." refers to Plaintiff's Brief of Amended Complaint and Demand for Jury Trial ("Amended Complaint") filed on January 31, 2014. (Doc. 27.)

[4] "Schneier Decl." refers to the Declaration of Sharon L. Schneier in Support of Defendant's Motion for Summary Judgment filed on December 21, 2016. (Doc. 174.)

involvement in its creation. (Def.'s 56.1 ¶ 7; Schneier Decl. Ex. J, ¶¶ 8–18; Schneier Decl. Ex. K, ¶ 28.) The Book states: "If a publisher interests you, send a SASE[5] for submission guidelines or check publishers' Web sites *before* submitting." (Schneier Decl. Ex. L, at 3.) The section on Abrams, which appears on the next page, warns authors not to submit originals: "Illustrations only: Do not submit original materials; copies only." (*Id.*) Douglas did not heed this warning and did not make a copy of the Manuscript prior to sending it to Abrams in October 2011. (*See* Pl.'s Resp. ¶¶ 11, 12.)

After receiving no response regarding his unsolicited Manuscript, Douglas sent a letter to Abrams on February 8, 2012 asking about the "status of the publication consideration."[6] (Am. Comp. ¶¶ 11–14.) Abrams sent a form letter dated November 1, 2012 to Douglas declining to accept the submission for publication (the "Rejection Letter"). (Weiner Decl. Ex A.)[7] Abrams did not return the Manuscript to Douglas. On November 19, 2012, Douglas sent a letter to Abrams, in which he demanded return of the Manuscript (the "Demand Letter").[8] (Pl.'s 56.1 ¶ 25.)[9] In the Demand Letter, Plaintiff stated that if the Manuscript had been lost or misplaced, he would settle out of court for $100,000. (*Id.* ¶ 26.)

Abrams receives thousands of unsolicited manuscripts a year. (Def.'s 56.1 ¶ 16.) Abrams does not have a practice of returning unsolicited manuscripts to the senders, nor has it ever maintained a list of the unsolicited manuscripts it receives. (*Id.* at ¶¶ 16–17.) No Abrams

---

[5] "SASE" appears to stand for "Self-Addressed Stamped Envelope." (Schneier Decl. Ex. L, at 1.)

[6] Although it is undisputed that Plaintiff claims to have sent this letter on February 8, 2012, (*see* Def.'s 56.1 ¶ 19), there is no record of when the letter was sent or whether it was received by Abrams, (*see* Schneier Decl. Ex K, ¶¶ 38–42).

[7] "Weiner Decl." refers to the Declaration of Samantha Weiner filed on December 21, 2016. (Doc. 175.)

[8] Although it is undisputed that Plaintiff claims to have sent the Demand Letter on November 19, 2012, (*see* Def.'s 56.1 ¶ 22), there is no record of when the letter was sent or whether it was received by Abrams, (*see* Schneier Decl. Ex K, ¶¶ 38–42).

[9] "Pl.'s 56.1" refers to Plaintiff's Statement of Material Facts. (Doc. 178.)

employee recalls reviewing any work submitted by Douglas or any work entitled "Fosu's World." (*Id.* ¶ 14; Schneier Decl. Ex. K, ¶¶ 35, 38–39.) And despite conducting multiple searches, Abrams employees have been unable to find the Manuscript or any record of it. (Def.'s 56.1 ¶ 23; Weiner Decl. ¶¶ 4–5.)

## II. Procedural History

On April 18, 2013, Plaintiff commenced this action with the filing of his complaint, (Doc. 1), which was amended on or about January 24, 2014, (Doc. 27). The Amended Complaint asserts fifteen various causes of action. (*See* Doc. 27.) Subsequent to the filing of the Amended Complaint, Plaintiff also filed additional claims styled as "motions," "briefs," and "ex parte applications" (the "Additional Applications/Claims"). (Doc. 28.)

On March 7, 2014, Defendant moved to dismiss the Amended Complaint and the Additional Applications/Claims. In opposing Defendant's motion, Plaintiff withdrew eight claims, (Doc. 47, at 10–11), which I allowed without prejudice, (Doc. 60, at 7). On September 26, 2014, I granted Defendant's motion to dismiss as to all claims except for Plaintiff's claims for conversion and replevin. (Doc. 60.) On February 4, 2015, I denied Defendant's motion for reconsideration of my decision to deny dismissal of Plaintiff's two remaining claims.[10] (Doc. 88.) Thereafter, the parties proceeded with discovery.

On December 21, 2016, Defendant filed a motion for summary judgment, (Doc. 170), and supporting materials, (Docs. 171, 172, 174–75). On February 8, 2017, Plaintiff filed a cross-motion for summary judgment,[11] (Doc. 181), and supporting materials, (Docs. 178, 180). On

---

[10] In denying the motion for reconsideration, I reiterated that Defendant's claim that it did not have the Manuscript, and its submission of a declaration attesting thereto, was neither before me at the time I issued my opinion on the motion to dismiss nor a fact upon which I could take notice at that stage in the litigation. (Doc. 88, at 3.)

[11] Plaintiff's cross-motion for summary judgment was mistitled as "Memorandum of Law Opposing Defendant's Motion for Summary Judgement and Cross Motion for Summary Judgment Pursuant to Fed. R. Civ. P. Rule 56(c)." (*See* Doc. 181.) Despite Plaintiff's failure to notify the Court or his adversary of his intent to file such a motion—as

4

March 31, 2017, Defendant filed its opposition to Plaintiff's cross-motion for summary judgment. (Docs. 189–90).

On April 28, 2017, Plaintiff filed his opposition, (Doc. 193), and supporting materials, (Docs. 194–95). On May 19, 2017, Defendant filed its reply in further support of its motion for summary judgment. (Doc. 196.) On June 12, 2017, Plaintiff filed his reply in further support of his motion for summary judgment, (Doc. 199), and a "Response to Dismiss Defendant's Opposition to his Cross Motion for Summary Judgment," (Doc. 201).

### III. Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the

---

well as his failure to oppose Defendant's motion in accordance with the briefing schedule—I allowed the parties to file their respective oppositions by March 31, 2017 and any replies by April 28, 2017. (Doc. 185.)

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)

(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held 'to less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (citation omitted)); *Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." (citations and internal quotation marks omitted)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

IV. **Discussion**

I apply New York law to Plaintiff's claims for conversion and replevin, addressing each claim in turn. Because there is no genuine dispute as to any material fact and Plaintiff fails to establish that Defendant was in possession of the Manuscript at the time Plaintiff allegedly demanded its return or at any point thereafter, both of his claims fail as a matter of law.

### A. *Conversion*

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 637 N.Y.S.2d 342 (1995)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff[']s rights." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 827 N.Y.S.2d 96, 100 (2006)); *see also Thyroff*, 460 F.3d at 404. Further, "there is generally insufficient evidence of conversion where the defendant lacks the power to surrender the chattel when demand is made." *Philip Wilson Publishers Ltd. v. Rizzoli Int'l Publ'ns, Inc.*, No. 95 CIV. 8674 (DLC), 1996 WL 209944, at *3 (S.D.N.Y. Apr. 29, 1996). "[F]or example, where goods are lost, stolen or destroyed, the failure to surrender possession is generally held not to constitute conversion." *Id.*

Here, Douglas has not established Abrams's dominion over the Manuscript or interference with it. He has not set forth any facts demonstrating that Abrams possessed the Manuscript at the time he allegedly demanded is return. Instead, the undisputed factual record demonstrates that no Abrams employee recalls reviewing any work submitted by Douglas or any work entitled "Fosu's World." (Def.'s 56.1 ¶ 14; Schneier Decl. Ex. K, ¶¶ 35, 38–39.) Despite conducting multiple searches, no Abrams employee has been able to find the Manuscript or any record of it. (Def.'s 56.1 ¶ 23); *see also Philip Wilson*, 1996 WL 209944, at *3 ("[W]here goods are lost, stolen or destroyed, the failure to surrender possession is generally held not to constitute conversion."). It is undisputed that Abrams discards manuscripts once a decision is made not to

publish them, and such a decision was made at the latest by November 1, 2012, the date of the Rejection Letter.[12] (Def.'s 56.1 ¶ 22.) Moreover, even if Abrams possessed the Manuscript at the time Douglas sent his alleged Demand Letter on November 12, 2012, and thereby had "the power to surrender the chattel when demand [was] made," *Philip Wilson*, 1996 WL 209944, at *3, Abrams does not have a practice of returning unsolicited manuscripts to sender, nor has it ever maintained a list of the unsolicited manuscripts it receives, (Def.'s 56.1 ¶¶ 16–17). Thus, Abrams lacked the ability to return the Manuscript in response to the Demand Letter on November 12, 2012, and its original possession of the Manuscript, if any, was lawful.[13] *See Philip Wilson*, 1996 WL 209944, at *3. Accordingly, summary judgment in Abrams's favor is appropriate with respect to Douglas's conversion claim.

### B. *Replevin*

Under New York law, "[r]eplevin is a remedy employed to recover specific, identifiable items of personal property." *TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) (quoting *Heckl v. Walsh*, 996 N.Y.S.2d 413, 414 (4th Dep't 2014)). To succeed on a replevin claim, "a party must show (1) that it has a superior possessory right to the chattel, and (2) that it made a demand for possession of the chattel from the defendant." *Press Access LLC v. 1 800 Postcards, Inc.*, No. 11 Civ. 1905(KBF),

---

[12] Douglas argues that he did not receive the Rejection Letter until December 14, 2012 and therefore Abrams possessed the manuscript on or after Douglas made his alleged demand on November 19, 2012. (Pl.'s Resp. ¶ 20.) This argument, however, does not create a genuine issue of material fact. Douglas has proffered no facts to refute that Abrams discards manuscripts once a decision is made to not publish them, and that such a decision was made on or before November 1, 2012. Moreover, the record also demonstrates that no one at Abrams discarded the Manuscript on or after November 19, 2012. (*See* Weiner Decl. ¶ 5.)

[13] The fact that Douglas can show that the Manuscript was likely delivered to Abrams on November 7, 2011, (Pl.'s 56.1 ¶ 22), sheds no light on whether Abrams possessed the Manuscript when Douglas made his alleged demand over a year later on November 12, 2012 or whether Abrams currently possesses the Manuscript. Instead, the record now demonstrates at the summary judgment stage that (1) Abrams has been unable to find the Manuscript or any record of it, despite conducting multiple searches, (Def.'s 56.1 ¶ 23); (2) Abrams does not return unsolicited manuscripts to sender, nor has it ever maintained a list of the unsolicited manuscripts it receives, (*id.* ¶¶ 16–17); and (3) Abrams discards manuscripts once a decision is made not to publish them, (*id.* ¶ 17).

9

2012 WL 4857547, at *1 (S.D.N.Y. Oct. 9, 2012) (collecting New York state cases). Thus, "[a] defendant's possession of the property sought is an element of a claim in replevin." *Zhao v. Wang*, No. 10-CV-1758 (JMA), 2013 WL 269034, at *5 (E.D.N.Y. Jan. 24, 2013), *aff'd*, 558 F. App'x 41 (2d Cir. 2014); *see also Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) ("A cause of action in replevin 'must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right.'" (quoting *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (2d Dep't 2004))).

As with his conversion claim, Douglas's replevin claim fails because he is unable to demonstrate that Abrams is in possession of the Manuscript. Therefore, he cannot show that Abrams was "in possession of certain property of which the plaintiff claims to have a superior right." *Zhao*, 2013 WL 269034, at *4–5 (quoting *Batsidis*, 9 A.D.3d at 343) (granting summary judgment where defendant was not in possession of the property at issue). Accordingly, summary judgment in Abrams's favor is appropriate with respect to Douglas's replevin claim.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to enter judgment for Defendant and close this case. The Clerk of Court is instructed to mail a copy of this Opinion and Order and the judgment to the pro se Plaintiff.

SO ORDERED.

Dated: March 19, 2018
New York, New York

Vernon S. Broderick
United States District Judge